UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 6:12cr0274 |
| VERSUS | * | JUDGE FOOTE |
| GARY JEFFERSON BYRD | * | MAGISTRATE JUDGE HILL |

REPORT AND RECOMMENDATION

Before the court is the Motion to Suppress filed by defendant, Gary Jefferson Byrd ("Byrd"). [rec. doc. 38]. The government filed Opposition. [rec. doc. 40]. The matter was set for hearing on April 4, 2013. Neither party introduced any evidence.[1] After oral argument, the Motion was taken under advisement. [rec. doc. 49]

For the following reasons, it is **RECOMMENDED** that the Motion to Suppress [rec. doc. 38] be **DENIED.**

BACKGROUND

On October 9, 2012, the defendant, Gary Jefferson Byrd, was indicted on two counts of child pornography in violation of 18 U.S.C. § § 2252A(a)(5)(B) and 2252A(a)(2)(A). Count 1 charges Byrd with possession of child pornography (images and movies) stored on computer compact disks (CDs) and DVDs on September 20, 2012, in violation of § 2252A(a)(5)(B). Count 2 charges Byrd with receiving child pornography beginning on February 29, 2008 and continuing until April 22, 2011, in violation of

---

[1] The search warrants at issue as well as the applications for the search warrants (with attachments) were already in the record, and were introduced by reference at the hearing as Court Exhibits 1 and 2. [*See* rec. doc. 49].

§ 2252A(a)(2)(A).[2] [rec. doc. 12]. On December 11, 2012, a Superceding Indictment was returned, charging the same two substantive counts. [rec. doc. 24].

The indictment stems from two searches, a September 20, 2012 search of Byrd's residence, pursuant to a search warrant issued by the undersigned on September 18, 2012 [*See* Ct. Ex. 1, 12-su-0151] and the subsequent search of Byrd's computer (which was seized during the September 20, 2012 search of Byrd's residence), pursuant to a search warrant issued by the undersigned on October 2, 2012 [*See* Ct. Ex. 2, 12-su-0158] . Both warrants were issued based on sworn affidavits of United States Postal Inspector Allyson L. Hoffine. In addition, both warrants were issued based on the undersigned's personal review of attachment C to the affidavit in support of the first search warrant, a CD containing multiple still shots from the videos described in the affidavit. [*See* Affidavit, 12-su-0151, at pg. 6 and Exhibit C, filed under seal on September 18, 2012].

Byrd seeks to have the evidence seized pursuant to these warrants suppressed, arguing that the warrants were obtained in violation of his Fourth Amendment rights. More specifically, Byrd argues that because the affidavits in support of the warrants do not expressly state that the CDs containing the videos Byrd was suspected of possessing and receiving contained images depicting the "lascivious exhibition of the genitals" by a minor, thereby constituting child pornography, the warrants were defective. Stated differently, Byrd argues that because the affidavits in support of the warrants fail to allege

---

[2]Prior to indictment, Byrd was the subject of a criminal complaint, alleging the same violations. [rec. doc. 1].

that the CDs containing the videos Byrd was suspected of possessing and receiving contained images depicting the "lascivious exhibition of the genitals" by a minor, probable cause to believe a crime had been committed, was lacking.

## LAW AND ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Thus, the Fourth Amendment bars only unreasonable searches and seizures. *Maryland v. Buie*, 494 U.S. 325, 331, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Accordingly, the purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *United States v. Garza*, 921 F.2d 59, 60 (5th Cir. 1991) *citing Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967).

Byrd's argument that the warrants lack probable cause because the affidavits in support of the warrants fails to establish probable cause that a crime had been committed is without merit. While the affidavits in support of the warrants do not expressly allege that the CD's containing the videos Byrd was suspected of possessing and receiving contained images depicting the "lascivious exhibition of the genitals" by a minor, the affidavits are sufficiently specific to support the conclusion that the videos believed to be in Byrd's possession depicted child pornography.

The Affiant described the content of three of the videos believed to have been purchased by Byrd in great detail, including allegations that these videos contained images of "minor boys seen naked" with "several close-ups of the minors' genitals and pubic area", "boys completely naked for most of the film" wherein "[t]he camera often focuses on the boys' genitals and buttocks", and "completely nude boys for most of the film" with "the camera . . . trained on the one [boy] touching his genitalia" as that as a young boy walks around naked holding his penis while the camera "focuses on the boy's penis and records the scene." The affidavit further states that the Inspector reviewed all of the videos ordered by Byrd and that they all were "similar to those described . . . and depict children engaging in sexual conduct." [12-su-151, affidavit, at pg. 6].

In child pornography cases, the term "lascivious" is a legal term of art. The Fifth Circuit has applied the *Dost* factors to assess lasciviousness. *United States v. Steen*, 634 F.3d 822, 826 (5th Cir. 2011) *citing United States v. Dost*, 636 F.Supp. 828 (S.D. Cal. 1986), *aff'd* 813 F.2d 1231 (9th Cir. 1987).[3][4] In this case, the allegations in the affidavit

---

[3]The *Dost* factors are as follows:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
4) whether the child is fully or partially clothed, or nude;
5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Steen,* 634 F.3d at 826. This list "is not exhaustive, and no single factor is dispositive." *Id.* at 827. Any

**4**

support the inference that the videos were clearly lascivious – the description of the videos notes not only that the boys in the videos are completely naked, but also that the focal point of the videos was on the genitals and pubic area of the boys. Thus, the allegations are sufficient to support a finding of probable cause that the videos contain child pornography and not mere nudity.

Furthermore, the undersigned did not rely solely on the allegations in the affidavits to determine that the warrants were supported by probable cause to believe a crime had been committed. The undersigned personally viewed the still shots from the videos contained on attachment C to the first affidavit, in order to verify that the videos, in fact, contained images depicting the "lascivious exhibition of the genitals" by minors. This independent review of the images themselves led the undersigned to independently conclude that the images constituted child pornography as defined by the applicable statutes, and not mere nudity.

In sum, the facts set forth in the affidavits, independently, and in conjunction with the undersigned's independent review of the images contained on the CD attached as Exhibit C to the first affidavit, establishes that there was probable cause for issuance of the warrants in this case.[5]

---

determination of lasciviousness must "be made based on the overall content of the visual depiction." *Id*.

[4]*But see Steen*, Higginbotham, J, concurring, 634 F.3d at 828-830, criticizing the use of the *Dost* factors.

[5]The CD is not attached to the affidavit submitted in support of the second warrant, which contains language nearly identical to the first affidavit. However, as stated by the undersigned on the

Furthermore, even if the affidavits and attachments were insufficient and the warrants were issued without probable cause, the search and seizure of the evidence may be upheld under the "good faith" exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 , 82 L.Ed.2d 677 (1984). In *Leon*, the Supreme Court held that "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992); *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006) *citing United States v. Leon*, 468 U.S. 897, 922-923, 104 S.Ct. 3405 , 82 L.Ed.2d 677 (1984).

This rule does not apply where the underlying affidavit is "bare bones," that is, "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Mays*, 466 F.3d at 343 *quoting Leon*, 468 U.S. at 923 (internal quotation marks and citation omitted). Byrd alludes to the "bare bones" exception, to argue that the good faith rule is inapplicable here. [6] However, the affidavits at issue herein are

---

face of the warrant by handwritten notation, in finding probable cause for the search of Byrd's computer, the undersigned relied on the affidavit submitted in support of the warrant "as well as the affidavit and attachments on the application for search warrant, case no. 12-su-151." *See* Search and Seizure Warrant, 12-su-158.

[6]Other exceptions to the good faith exception occur when (1) the issuing-judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) the issuing-judge "wholly abandoned his judicial role" in such a manner that "no reasonably well trained officer should rely on the warrant", and (3) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Mays*, 466 F.3d at 343 *quoting Leon*, 468 U.S. at 923. Byrd does not argue any of these exceptions are applicable,

clearly not mere "bare bones" affidavits. To the contrary, the affidavits provide facts, and not mere conclusions. *See Satterwhite*, 980 F.2d at 321. Furthermore, to the extent that the affidavits can be said to provide mere conclusions, which the Court finds they do not, the undersigned's independent review of the still images contained on attachment C to the first affidavit, is sufficient to cure any alleged inadequacies presented by an examination of the language of the affidavits themselves. *See Illinois v. Gates*, 462 U.S. 213, 240, 103 S.Ct. 2317, 2333 (1983) (noting that the magistrate may draw reasonable inferences from the material supplied to him by applicants for a search warrant in determining the existence of probable cause).

In short, the undersigned did not rely solely on the written descriptions of the Affiant, but personally viewed the images to determine, independently, that probable cause existed to believe that the child pornography statute had been violated.

In light of the above, Byrd has failed to show that the good faith exception to the exclusionary rule is inapplicable in his case. Accordingly, suppression of the evidence seized during execution of the search warrants is not warranted.

For the above reasons, **IT IS RECOMMENDED** that the Motion to Suppress filed by defendant Gary Jefferson Byrd [rec. doc. 38] be **DENIED.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this

---

nor does he allude to the applicability of these exceptions in his pleadings. Accordingly, they are not addressed.

report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Lafayette, Louisiana, June 5, 2013.

                                                         _____
                                                         C. MICHAEL HILL
                                                         UNITED STATES MAGISTRATE JUDGE