# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 6:12-00274 |
| | | CIVIL NO. 6:16-1365 |
| VERSUS | * | JUDGE FOOTE |
| GARY JEFFERSON BYRD | * | MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Motion to Vacate filed pursuant to 28 U.S.C. § 2255 by *pro se* petitioner, Gary Jefferson Byrd ("Byrd"). [rec. doc. 113].  The Government has filed an Answer, and a Memorandum in Support of its Answer [rec. doc. 120], to which  petitioner filed a Reply.  [rec. doc. 123].

For the following reasons, the undersigned recommends that the Motion be **DENIED AND DISMISSED WITH PREJUDICE**.  Because the undersigned is able to make this recommendation based on the record, transcripts and briefs filed by the parties, no evidentiary hearing is necessary.[1]

## BACKGROUND

In 1992, Byrd was convicted of receiving child pornography through the mail in violation of 18 U.S.C. § 2252(a)(2), for which he was sentenced to the

---

[1]No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record.  *U. S. v. Green,* 882 F.2d 999, 1008 (5th Cir.1989).

statutory maximum of ten years imprisonment.  Byrd defended the case arguing, in part, that the child pornography had been obtained as part of Byrd's own private investigation into a pedophile ring involving the Catholic Church, the Louisiana D.H.H.R. (which he claimed was out to get him) and various high-level government officials.[2]  At trial, evidence that Byrd had molested two minor boys, one of which was a foster child living with Byrd, was presented.  Byrd completed his sentence and was released.  *See United States v. Gary Jefferson Byrd,* 6:92-cr-60025 (W.D. La.); *see also United States v. Byrd*, 31 F.3d 1329 (5th Cir. 1994).

On October 9, 2012, Byrd, was indicted on two child pornography counts.  Count 1 charged Byrd with possession of child pornography images and movies stored on computer compact disks (CDs) and DVDs on September 20, 2012, in violation of 18 U.S.C. § 2252A(a)(5)(B).  Count 2 charged Byrd with receiving child pornography beginning on February 29, 2008 and continuing until April 22, 2011, in violation of 18 U.S.C. § 2252A(a)(2)(A).[3]  [rec. doc. 12].  On December 11, 2012, a Superceding Indictment was returned, charging the same two substantive counts. [rec. doc. 24].

---

[2]Byrd additionally argued that the government, by its sting operation, entrapped him into ordering the child pornography tapes.

[3]Prior to indictment, Byrd was the subject of a criminal complaint, alleging the same substantive counts. [rec. doc. 1].

The indictment stemmed from an investigation conducted by the U.S. Postal Inspector of a Canadian company, Azov Films, which sold films over the internet. An undercover inspector made purchases from Azov which were shipped from Buffalo, New York to Nashville, Tennessee. Based on the content of these films, the postal inspector obtained a warrant authorizing the search of Azov's Toronto, Canada offices. Byrd's name was found on customer invoices obtained from the search. These invoices reflected that Byrd had ordered materials from Azov. Azov utilized a "disclaimer" stating its films were "legal" in the United States. This information was forwarded to the Baton Rouge Field Office. Byrd ordered CDs titled "Vladik Anthology" and "Cutting Room Floor", containing video of young, naked boys, engaging in a number of activities, including the pushing of cup cakes between their buttocks toward the anus.

The local postal inspectors obtained a warrant from Magistrate Judge Hill to search Byrd's residence. During the search, the government seized numerous CDs and still images which form the basis of the indictment.

Following a trial by jury, Byrd was convicted of both counts of the superceding indictment. On April 11, 2014, Byrd was sentenced to 168 months imprisonment on Count 1 and 180 months imprisonment on Count 2, the sentences to run consecutively.

The Fifth Circuit affirmed Byrd's convictions and sentences on March 3, 2015.  On direct appeal, Byrd argued that there was insufficient evidence to support his convictions because the items found in his possession do not constitute child pornography, and alternatively, that he did not knowingly possess child pornography because he believed the materials did not qualify as child pornography.  *United States v. Byrd*, 595 Fed. Appx. 431 (5th Cir. 2015).  In rejecting the former claim, the Fifth Circuit expressly found that its review of the evidence refuted Byrd's assertion that the items underlying his conviction do not amount to child pornography and additionally found no clear error in the jury's "conclusion that these items contained a lascivious exhibition of children's genitalia."  *Id*. at *432.  The United States Supreme Court denied writs of certiorari on October 5, 2015.  *Byrd v. United States*, 136 S.Ct. 96 (2015).

In the instant Motion, petitioner argues four claims for relief: (1) that his counsel was ineffective for failing to allow him to testify to explain the basis for his innocence, including that the Azov Naturist Film Company from which he purchased was a "main line company" which was "legitimate" and which produced "only legal films" and that he "reviewed disclaimers" on these products, and that he obtained other stills from "bulletin boards which prohibited any child pornography"; (2) that the government engaged in selective prosecution by

4

choosing to prosecute him and not others who were customers of the Azov Naturist Film Company because Byrd was "proceeding to address misbehavior of the AUSA" in a prior 1992 trial, and that his attorney was ineffective for failing to raise this issue; (3) that there is no record evidence indicating which of the many images the jury unanimously found constituted child pornography to convict him and that his attorney was ineffective for failing to object as to this lack of specificity; and (4) that there is no testimony as to the age of the specific individuals depicted in the image or images the jury unanimously relied on to convict him and that counsel was ineffective for failing to object as to this lack of specificity.

## LAW AND ANALYSIS

### I. Claims Properly Considered in this § 2255 Motion/Scope of Review/ Procedural Defaulted Claims

A federal prisoner may collaterally attack his conviction and sentence by filing a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Section 2255 provides four grounds for relief: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is

otherwise "subject to collateral attack."

While this language appears broad, the scope of review is actually narrow. The Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral challenge may not do service for an appeal." *United States v. Shaid,* 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*), *cert. denied*, 502 U.S. 1076 (1992) *citing United States v. Frady,* 456 U.S. 152 (1982). Following a conviction and exhaustion or waiver of the right to direct appeal, federal courts presume a defendant stands fairly and finally convicted. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir.) *reh. denied* (1998) *citing Shaid,* 937 F.2d at 231-32; *Frady,* 456 U.S. at 164. As a result, review under § 2255 is ordinarily limited to questions of constitutional or jurisdictional magnitude. *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232. However, those issues may not be raised for the first time on collateral review without a showing of both cause for the procedural default and actual prejudice resulting from the error. *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232 *citing Frady,* 456 U.S. at 166.[4]

Other types of error may not be raised under § 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal and, if

---

[4]A departure from the cause and actual prejudice test might be warranted in cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Shaid,* 937 F.2d at 232; *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2645 (1986). As set forth below, there has been no constitutional violation in petitioner's case and petitioner has not demonstrated that he is actually innocent. Accordingly, this exception is inapplicable here.

condoned, would result in a complete miscarriage of justice. *Cervantes*, 132 F.3d at 1109; *United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir. 1992), *cert. denied*, 506 U.S. 1007 (1992).

The government correctly asserts, under the applicable law, all of petitioner's substantive claims, except his claims of ineffective assistance of counsel, may not properly be considered in this § 2255 Motion. These substantive claims were not presented on direct appeal and petitioner has failed to demonstrate either cause or prejudice for his default or that failure to address petitioner's claims would result in a complete miscarriage of justice. They are therefore procedurally barred. These claims include the following: that the government engaged in selective prosecution (part of claim 2), that there is no record evidence indicating which of the many images the jury unanimously found constituted child pornography to convict Byrd (part of claim 3) and that there is no testimony as to the age of the specific individual depicted in the image the jury unanimously relied on to convict Byrd (part of claim 4). Nevertheless, these claims will be briefly addressed below in the context of Byrd's corresponding ineffective assistance of counsel claims.

## II.  Merits Review

## A.  Ineffective Assistance of Counsel

Petitioner contends that he was denied the effective assistance of counsel

for the following reasons: (1) that counsel was ineffective for failing to allow him to testify to explain the basis for his innocence, including that the Azov Naturist Film Company from which he purchased was a "main line company" which was "legitimate" and which produced "only legal films" and that he "reviewed disclaimers" on these products, and that he obtained other stills from "bulletin boards which prohibited any child pornography"; (2) that counsel was ineffective for failing to raise that the government engaged in selective prosecution by choosing to prosecute him and not others who were customers of the  Azov Naturist Film Company because Byrd was "proceeding to address misbehavior of the AUSA" in a prior 1992 trial; (3) that counsel was ineffective for failing to object to the lack of specificity as to which of the many images the jury unanimously found constituted child pornography  to convict him; and (4) counsel was ineffective for failing to object to the lack of specificity as to the age of the individual depicted in the specific image the jury unanimously relied on to convict him.

Courts can consider claims of ineffective assistance of counsel that are brought for the first time in a § 2255 motion. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).  To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that,

but for counsel's deficient performance, the outcome of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668 (1984).

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 688.  Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.  The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (citation omitted).  Thus, this court's review "strongly presum[es] that counsel has exercised reasonable professional judgment."  *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting  Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th  Cir. 1986).

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.[5] A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d

631, 635 (5th Cir. 2001).  A petitioner must affirmatively prove prejudice.

*Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d

1062,1066 (5th Cir. 1998).  Self serving conclusory statements that the outcome

would have been different "fall far short of satisfying *Strickland's* prejudice

element." *Sayre*, 238 F.3d at 635.  Moreover, allegations of a mere possibility of a

different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179

F.3d 352, 359 (5th Cir. 1999).

The Supreme Court has repeatedly reiterated that "[s]urmounting

*Strickland*'s high bar is never an easy task." *Cullen v. Pinholster,* 563 U.S. 170,

197 (2011) *quoting Padilla v. Kentucky*, 559 U.S. 356, 371(2010).  Because both

---

[5]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
> An error by counsel, even if professionally unreasonable, does not
> warrant setting aside the judgment of the criminal proceeding if the error
> had no effect on the judgment.  *Cf. United States .v Morrison,* 449 U.S.
> 361, 364-65 (1981).

> Defendant must show that there is a reasonable probability that, but for
> counsel's unprofessional errors, the result of the proceeding would have
> been different.  A reasonable probability exists if the probability is
> sufficient to undermine confidence in the outcome.

> When a defendant challenges a conviction , the question is whether there
> is reasonable probability that absent the errors the fact-finder would
> have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

*Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94.

**Failure to Allow Byrd to Testify**

Byrd alleges that his counsel, Randal McCann, did not allow him to testify to explain the basis for his innocence and therefore, his counsel performed deficiently.  Byrd asserts that had he been allowed to testify, he would have been able to establish that  the Azov Naturist Film Company, from which he purchased materials, was a "main line company" which was "legitimate" and which produced "only legal films", that he "reviewed disclaimers" on these products, and that he obtained other stills from "bulletin boards which prohibited any child pornography", thus supporting his claim of innocence.

A criminal defendant's right to testify is well established, and only the defendant can waive this right, not his counsel. *United States v. Harris*, 408 F.3d 186, 192 (5th  Cir.2005)*; United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002).   Thus, counsel cannot override the ultimate decision of a defendant who wishes to testify contrary to counsel's advice.  *Bower v. Quarterman,* 497 F.3d 459, 473 (5th Cir. 2007); *Mullins*, 315 F.3d at 453.

In this case, the record conclusively establishes that petitioner, not his counsel, knowingly, voluntarily and intelligently waived his right to testify at trial. The trial transcript confirms that Byrd expressly acknowledged on the record in response to questioning by the Court  that he was aware of his right to testify and that he was choosing instead to exercise his right to remain silent. [rec. doc. 105, pg. 50, tr. pg. 210].  Thus, the trial transcript negates any claim by Byrd that Mr. McCann failed to allow him to testify.

Nevertheless, even if Byrd had not waived his right to testify on the record, the claim is without merit.  "A defendant who argues that his attorney prevented him from testifying must still satisfy the two prongs of *Strickland*." *Bower,* 497 F.3d at 473 *citing Harris*, 408 F.3d at 192.   The Fifth Circuit has found claims, like that asserted by Byrd, to be meritless in the absence of a sufficient showing of *Strickland* prejudice.   *Mullins*, 315 F.3d at 456-457; *Harris*, 408 F.3d at 192-193.

In *Mullins,* the Fifth Circuit held that the district court did not clearly err in finding the attorney's actions "objectively unreasonable," but reversed on application of the second *Strickland* prong, concluding that the defendant could not show that he was prejudiced by his attorney's failure to call him as a witness. *Id*. at 456.  Considering that all or much of Mullins's testimony was in the record elsewhere, in addition to the potential damage that the government could elicit on

12

cross-examination, Mullins could not show how his testimony probably would have changed the outcome of his case. *Id.*

In *Harris*, all or much of Harris's proffered testimony was elsewhere in the record as a result of defense counsel's questioning of  the defense sole  witness and the cross-examination of the law enforcement officers. Furthermore, the Fifth Circuit opined that putting Harris on the stand probably would have done more harm than good, and would have placed him subject to rigorous potentially damaging cross-examination.  The Fifth Circuit therefore found that Harris had not shown that he was prejudiced by not testifying.

The same is true in this case.  All or much of petitioner's version of events supporting his claim of innocence, which petitioner presumably would have testified to had he taken the stand, appears  in the record.  At the time the search warrant was executed Byrd made a statements to the local postal inspector Allyson Hoffine explaining his innocence.  These statements were introduced at trial through the testimony of the inspector.  She testified that Byrd explained that the images were not child pornography and legal because they depicted nude boys engaged in "ordinary activities" and the Azov videos contained a disclaimer to that effect.  Byrd also explained that he was collecting the videos as "research" to prepare a federal lawsuit to restore his medical licence, and that he planned to

compare the Azov images to those images used in his 1992 prosecution, which he suggested were similar, to demonstrate that the 1992 images were likewise legal and not child pornography.   Byrd also explained to the inspector that there were two divisions of Azov, one dealing with pornography and the other in erotica, and that law enforcement targeted only the former.   Thus, suggesting that the company from which he bought materials was legitimate and produced only legal films. The Azov disclaimer was admitted into evidence as a defense exhibit and a government witness admitted that the disclaimer appeared at the beginning of the Azov films.   Byrd told the inspector that he did not obtain sexual gratification from viewing the images.   The inspector also admitted that Byrd did not attempt to hide the Azov videos, an action inconsistent with guilty knowledge. On cross-examination, the inspector admitted that Byrd ordered the materials in his name, using his normal email address and post-office box, again indicative of a lack of guilty knowledge.  [*See* rec. doc. 104, trs. pg. 35-36, 88-97; rec. doc. 105, trs, pgs. 159-161, 171-172, 177, 182-189; Def. Ex. 1].

The jury was presented with evidence supporting Byrd's "research" defense – folders bearing labels "Additional G-rated Family Value Pics from a Public Free Site, Dr. Morgan Research + Civil Law Material" and "Additional Miscellaneous Pictures Posted in alt.binaries.pictures.boys, all G-rated, Free, at Public Access, Dr. Morgan Research + Civil Law Material", which contained presumably legal

images of partially nude boys obtained from presumably lawful internet sources, discovered during the search of Byrd's residence. [*See* rec. doc. 104, trs. pg. 92-97; Govt. Ex. 24 and 25].

Although petitioner apparently claims that he would have provided additional testimony from Wikipedia to demonstrate that Azov was legitimate, that testimony would likely have been inadmissible hearsay. As in *Harris,* putting petitioner on the stand most probably would have done more harm than good. Although evidence of Byrd's prior conviction was presented to the jury in the form of a stipulation [rec. doc. 104, tr. pg. 31; Govt. Ex. 30], had petitioner testified, that he had no interest in children and was only doing investigation to get his license back, he would have been subjected to extensive cross-examination about his prior conviction, thereby compounding this unfavorable evidence and further inflaming the jury. Moreover, he could have opened the door to evidence of another witness, MB, who was willing to testify that when he was a minor under Byrd's care, like the two victims of Byrd's prior conviction, he had been the victim of improper sexual conduct by Byrd. That is potential testimony that defense counsel had convinced the court to exclude. [rec. doc. 36; 106, sealed hearing trs; 105, tr. pg. 196-209]. By affidavit, McCann has stated that these were his exact concerns, that the jury would be presented with damaging cross-examination

15

testimony regarding the similarity between the prior offense and the instant

offense, including similarity of the images and defenses, as well as the potential

that the court would permit the third child who had been under Byrd's care to

testify.[6]   [rec. doc. 120-1, ¶ 3 and 5]. Under these circumstances, the Court cannot

find that Byrd's failure to testify unduly prejudiced his case.

In sum, Byrd has not demonstrated that had he testified, the result of his

criminal trial would have been different, or stated differently, that his testimony

would have made a different outcome reasonably probable. *See Mullins,* 315 F.3d

at 456 *citing Sayre, supra.* (finding that *Strickland*'s prejudice element, "which

raises high the bar to relief",  not satisfied because while the petitioner's testimony

*might* have persuaded the jury, the court could not say that there was a reasonable

probability that his testimony would have done so).  Whether Byrd testified or not,

the jury heard his side of the story and was simply not persuaded.   Accordingly,

petitioner has not satisfied the second  *Strickland* requirement and is therefore not

entitled to relief with respect to this claim.

**Selective Prosecution**

Byrd argues that he was subjected to selective prosecution because AUSA

---

[6]*See also Miranda v. Scott,* 38 F.3d 570 (5th Cir. 1994) *citing Hollenbeck v. Estelle*, 672 F.2d 451, 453-454 (5th Cir.), *cert. denied*, 459 U.S. 1019 (1982) ("[a]n attorney's decision advising a client not to testify does not constitute ineffective assistance when it is reasonable to conclude that the testimony would be more damaging than beneficial.").

Walker, who had prosecuted Byrd in 1992, knew that Byrd was "actively developing" information demonstrating that perjured testimony and altered evidence had been admitted in his prior trial, and that McCann was ineffective for failing to raise this issue.

Initially, the Court notes that there is no evidence that perjured testimony or altered evidence had been admitted in Byrd's prior trial. To the contrary, the conviction was affirmed on direct appeal and Byrd's three prior § 2255 motions have been unsuccessful. *United States v. Byrd*, 31 F.3d 1329 (5th Cir. 1994); *Byrd v. United States*, 514 U.S. 1052 (1995); 6:92-cr-60025, rec. docs. 181, 203, 209, 223; *United States v. Byrd*, No. 99-31425 (5th Cir. 1999) (unpublished).

Further, it is clear that McCann did not render ineffective assistance for failing to raise this meritless issue by motion, objection or otherwise. In order to prevail in a defense of selective prosecution, a defendant must meet two requirements which the Fifth Circuit has characterized as a "heavy burden." *United States v. Jennings*, 724 F.2d 436, 445 (5th Cir. 1984) (citations omitted). First, he must make a *prima facie* showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted. *Id*. Second, having made the first showing, he must then demonstrate that the government's selective prosecution of him has been

17

constitutionally invidious. *Id*.  The showing of invidiousness is made if a defendant demonstrates that the government's selective prosecution is actuated by constitutionally impermissible motives on its part, such as racial or religious discrimination. *Id.*

Here the government has cited several cases wherein individuals were prosecuted for receiving Azov products.   *United States v. Silva*, 794 F.3d 173 (1st Cir. 2015); *United States v. Wilson*, 2012 WL 7992597 (N.D. Ga. 2012), *adopted*, 2013 WL 1800018 (N.D. Ga. 2013);  *United States v. Castaneda*, 2014 WL 3361739 (D. Kan. 2014); *United States v. Hood*, 2015 WL 877753 (N.D. Ga. 2015). In his affidavit, McCann states that after the issue was raised , prior to trial, he conducted research on this issue and discovered at least another case involving the Canadian company. [rec. doc. 120-1, ¶ 6].  Thus, Byrd would not have sustained his heavy burden to make a *prima facie* showing that he had been singled out for prosecution, when other similarly situated individuals had not.

Even if Byrd could have made out a *prima facie* case, he would not have been able to satisfy the second requirement, a constitutionally invidious motive or discrimination.  There is no suggestion of racial or religious discrimination. As noted by McCann in his affidavit, it is highly improbable that Walker was carrying out a vendetta against Byrd years after his 1992 prosecution and years after his

release from serving his sentence.  [rec. doc. 120-1, ¶ 6]. This is particularly the case, as also noted by McCann in his affidavit, since Byrd's prosecution originated in connection with an out-of-state investigation of the Canadian company from which Byrd purchased, not locally in Louisiana. [*See Id.*].  Thus, there is simply no evidence of any constitutionally invidious motive which could have supported a selective prosecution defense.

**Unanimity as to Child Pornography and Age**

In these related claims, Byrd argues that counsel was ineffective for failing to object to the lack of specificity as to which of the many images the jury unanimously found constituted child pornography and which of the many images the jury unanimously found depicted a minor in order to convict him.  He asserts that "there is no record or evidence that [the jury] voted unanimously that any particular image . . . represented child pornography" or identification "as far as the votes of the jury" as to the "actual age of the individual[]" in the specific image. [rec. doc. 113, pg. 7 and 8].

By affidavit, McCann states that he did not request a more specific instruction as to the qualifying image as he believed from his experience and inquiry that it was not necessary because the statute required the jurors to find one of the many images satisfied all elements of each offense.  He further states that the Fifth Circuit Pattern instructions were utilized in this case. [rec. doc. 120-1, ¶

7].

In order to convict Byrd, the government had to prove that Byrd's conduct involved "child pornography" as defined by statute (18 U.S.C. § 2256(8)) which in turn requires a depiction of a "minor" engaged in "sexually explicit conduct" (18 U.S.C. § 2256(1) and (2)(A)).  Byrd apparently believes the jurors should have been required to make a specific separate finding as to which of the many images the jury unanimously found constituted child pornography.  He cites no authority in support of his contention, and the Court has found none.

Contrary to Byrd's present argument, the jurisprudence suggests that in multiple images cases, there is no requirement that the jury specify which image it finds satisfies the statutory definition.  Rather, all that is required is that the jury unanimously agree that one of the images satisfies the statutory definition.  *United States v. Dvorin*, 817 F.3d 438, 447 (5th Cir. 2016); *see also United States v. Boyle*, 700 F.3d 1138, 1142-1143 (8th Cir. 2012) *citing Griffin v. United States*, 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991)  (rejecting an argument in a child pornography case that failure to give a specific unanimity instruction as to which images supported the defendant's conviction in light of *Griffin* because "when one theory of conviction is supported by sufficient evidence and another is not, a reviewing court presumes that the jury convicted on the supported theory.").  "In the routine case, a general unanimity instruction will ensure that the jury is

unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability." *Dvorin*, 817 F.3d at 447.  Because the Court concludes  that  there is no requirement that the jury make a unanimous separate finding on which image satisfies the statutory elements in a multiple image child pornography prosecution, McCann's conduct did not fall below the level of objective reasonableness.

Moreover, in this case the parties requested, and the Court gave, the Fifth Circuit pattern instructions for possession of child pornography, receipt of child pornography and the duty to deliberate which includes a general unanimity instruction. [rec. doc. 56; 105, tr. pg. 223-228].  Examination of the instruction given by the Court makes clear that the jurors were instructed that in order to convict they had to find "*one* or more . . . images that contained any visual depiction of a minor engaging in sexually explicit conduct", "*a* visual depiction . . .of a minor engaging in sexually explicit conduct" and  "*an* image or video of child pornography. . . ." [rec. doc. 105, tr. pg. 223, 226 and 228].  They were additionally instructed that all twelve of the jurors had to agree on their verdict. [*Id.* at 228]. "[J]urors are presumed to follow the instructions given to them by the court." *United States v. Nieto*, 721 F.3d 357, 371 (5th Cir. 2013)*; United States v. Owens*, 683 F.3d 93, 104 (5th Cir.2012). Thus, there was no need in this case to require further specification or a specific finding by the jurors as Byrd suggests.

Defense counsel McCann's reliance on the Fifth Circuit pattern instructions given by the Court was objectively reasonable.

Finally, the record reveals that McCann did object to the lack of evidence of the age of the individuals depicted in the images. However, the Court overruled the objection finding it "quite clear from the graphic depiction of the children's genitals that they were prepubescent minors for the most part" and although one or two pictures displayed some pubic hair, they nevertheless appeared to the Court to be minors. [rec. doc. 105, tr. pg. 214-215]. Both Judges of this Court who viewed the images agreed that they depicted child pornography. [rec. docs. 105, tr. pg. 215 (Judge Foote); 50, pg. 5-6 and 51, pg. 5 (Report and Recommendations of Magistrate Judge Hill). Furthermore, on direct appeal, the Fifth Circuit agreed and found that some of the images possessed by Byrd constituted child pornography. *United States v. Byrd*, 595 Fed. Appx. at 432. As such, Byrd has shown no prejudice as each of his convictions are not reversible, despite counsel's alleged inaction. Therefore, neither the first nor second *Strickland* elements are satisfied and Byrd is not entitled to relief on either of these claims.

In light of the above, the undersigned recommends that Gary Jefferson Byrd's § 2255 Motion [rec. doc. 113] be **DENIED and DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting**

forth arguments on whether a certificate of appealability should issue. *See* 28

U.S.C. §  2253(c)(2). **A courtesy copy of the memorandum shall be provided to**

**the District Judge at the time of filing.**

     Signed this 3rd day of April, 2017, at Lafayette, Louisiana.

                    _____

                    **PATRICK J. HANNA**
                    **UNITED STATES MAGISTRATE JUDGE**